HARRY BRESKY & another *vs.* M. E. ROSENBERG.

Hampden.    December 7, 1925. — May 27, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Contract*, What constitutes. *Sale. Evidence*, Competency, Relevancy and materiality. *Practice, Civil*, Order of evidence. *Frauds, Statute of.*

At the trial of an action for breach of an alleged agreement to purchase certain flour from the plaintiff, there was evidence that a salesman in the plaintiff's employ procured the signature of the defendant upon a written order for flour which left the price per barrel blank; that the price was not then inserted because the agent did not know it; that the order was taken by the agent subject to confirmation by the plaintiff; that the agent and the defendant agreed that the price would be stated in a confirmation to be sent to the defendant by the plaintiff; that a letter later was sent by the plaintiff to the defendant containing the price and also stating terms as to freight differing from those stated in the order; that then the plaintiff inserted the price in the original order over the defendant's signature.  The order with the price thus inserted was admitted in evidence.  *Held*, that

(1) Whether the insertion of the price after the signing of the order was done in the circumstances stated in the evidence was a question of fact for the jury;

(2) If the insertion was made in those circumstances, there was no material alteration of the order;

(3) The order with the price inserted properly was admitted in evidence.

At the trial above described, it appeared that the order called for shipment in September and October.  In August the defendant requested that no shipments be made until he called for them and the plaintiff assented. In October and December, the plaintiff wrote letters to the defendant asking orders for shipment.  No order ever was given.  No shipments were made and no flour was appropriated by the plaintiff to the contract.  In February the defendant asked for a cancellation of the order, declaring that no shipments would be accepted.  One of the letters from the plaintiff in October was answered by the defendant.  The letter contained some immaterial matter, but the defendant did not move to have such matter excluded from the attention of the jury, and excepted generally to the admission of the letters.  *Held*, that the letters were competent and were properly admitted, and that the defendant had no ground for exception.

The order in which evidence shall be admitted at a trial is within the discretionary control of the trial judge.

At the trial of the action above described, the defendant contended and the plaintiff denied that the sale was by sample.  It appeared that the

parties had had other transactions with each other and that, after
the defendant signed the order in issue, he received from the plaintiff
under a previous contract a shipment of flour of the same trade name
as that stated in the order.  The defendant offered to show that the
flour thus received on the previous contract was inferior in quality and
that he told the plaintiff that unless the flour which was the subject of
the order upon which the action was based was better than that in-
cluded in the shipment under the previous contract just received, he
would not use it.  The offer of evidence was rejected.  *Held,* that the
offer properly was rejected, since it had no tendency to show that the
flour which the plaintiff might ship to the defendant when given
shipping orders would not comply with the alleged sample.

After the defendant in June had signed the order for flour with the price
left blank, as above described, the plaintiff had inserted the price and
had written to the defendant a letter called a "confirmation," stating
terms as to freight varying from those in the order, the plaintiff in
October wrote two letters to the defendant requesting shipping orders,
to one of which the defendant replied over his signature, ". . . I cannot
use any flour at the present time as the last car you shipped me was so
poor that I have to buy flour to mix with it . . . .  I will let you know
when I will be able to use the flour at a latter [*sic*] date.  Hoping that
this will be satisfactory . . . ."  The judge at the trial instructed the
jury that there was a written contract of sale entered into by the parties.
A motion by the defendant that a verdict be ordered in his favor was
denied and there was a verdict for the plaintiff.  *Held,* that

(1) Although neither the original order, the confirmation, the
plaintiff's letter in October, nor the defendant's reply to it, taken alone,
would satisfy the requirements of the statute of frauds, they could be
taken together and, when they were so taken, the requirements of the
statute were satisfied;

(2) Oral testimony to connect the writings above described was
admissible;

(3) It was proper to refuse to direct a verdict for the defendant.

An instruction to the jury at the trial above described, that the damages
were the "difference between the contract price . . . as fixed by the
order . . . and the fair market value of the same goods" when the
defendant finally refused to take the goods, with interest from the date
of the writ, was correct.

In view of the evidence at the trial of the action above described, that
under a contract calling for deliveries in September and October the
defendant requested that no delivery be made excepting upon his order,
that no orders were given, and that no tender was made by the plaintiff
because the defendant refused to accept the goods and warned the
plaintiff not to send them, delivery by the plaintiff was excused and
a tender was not necessary.

Evidence at the trial above described relating to interviews bearing upon
the writings was contradictory and raised a question of fact, whether
the parties made a contract as contended by the plaintiff; and therefore
a ruling by the judge as a matter of law that the parties entered into a
contract in the terms shown by those writings was error: that question
should have been submitted to the jury.

CONTRACT for damages alleged to have resulted from a breach of a contract of sale of flour by the plaintiff to the defendant. Writ dated March 14, 1921.

In the Superior Court, the action was tried before *Callahan*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in his favor. The motion was denied. The defendant asked for the following rulings:

"1. On the evidence and pleadings plaintiff cannot recover.

"2. The insertion of the price was a material alteration and precludes the plaintiff from recovering.

"3. The plaintiff was in default in not shipping the flour as called for by the contract and cannot recover.

"4. If the letter and paper called 'Sale Confirmation' differed from the order in writing there was no acceptance and plaintiff cannot recover.

"5. The paper called 'Sale Confirmation' did differ from the order and consequently there was no contract.

"6. If there was no price specified the rule of law is that the price must be a reasonable price.

"7. It was the duty of the plaintiff to ship the flour in accordance with the shipping instructions in the contract in September and October, and not to wait for shipping instructions from the defendant.

"8. There was no delivery and no offer to deliver, so plaintiff cannot recover."

The rulings were refused.

Other material instructions given by the judge are described in the opinion. There was a verdict for the plaintiff in the sum of $2,542.56. The defendant alleged exceptions.

The case was submitted on briefs.

*R. P. Stapleton & B. F. Evarts*, for the defendant.

*H. M. Ehrlich*, for the plaintiffs.

WAIT, J. The plaintiffs sued for breach of a contract to purchase five hundred barrels of Good Will flour and two hundred barrels of Seaboard Clear flour. The defendant set up in answer, in addition to a general denial, that the sale was by sample and that the goods were not up to the sample;

that the contract, if any, was in writing and had been altered in a material particular; and that the statute of frauds had not been complied with.

The case is before us, after a verdict for the plaintiffs, upon exceptions taken by the defendant to admission and exclusion of evidence, to the refusal to direct a verdict for the defendant, to the refusal to give certain instructions to the jury, and to portions of the charge.

There was evidence from which the jury could find the following facts: In June, 1920, a salesman for the plaintiffs, who were dealers in flour at Boston and elsewhere, called upon the defendant, a baker, at his place of business in Holyoke, and took an order for five hundred barrels of Good Will flour, a patent brand of flour sold by the plaintiffs; and for two hundred barrels of Seaboard Clear flour. A written form of order was signed by the defendant which specified the number of barrels, the kind of flour, the price per barrel of the Good Will flour, and the time and terms of delivery. A duplicate of this order was given to the defendant; and the original was sent with a letter by the agent to the plaintiffs at Boston. The order called for two car loads, one to be shipped in September, and one in late October. The minimum load of a car was three hundred and ten barrels. The order, although signed by the plaintiffs' agent, was not to be effective until accepted by the plaintiffs. Later in July or August the defendant, at Boston, requested that the flour be not shipped until he called for it, and the plaintiffs assented. The flour was at the mills in Minnesota; and none ever was set aside or appropriated to this contract. In October, November and December the plaintiffs wrote the defendant asking orders for shipment; but none ever was given. The parties had had other transactions in flour and the defendant claimed to be dissatisfied with the quality of the flour supplied to him. In February, 1921, the defendant's attorney wrote the plaintiffs requesting the cancellation of all orders which they now had, on account of the inferior quality of the flour, and, declaring that no more shipments would be accepted, warned them that any shipment would be at their own risk. The market price of flour

fell after June, and in September, October and the following February was much lower than when this order was given.

The plaintiffs sought to introduce, as Exhibit 1, the original order signed by the defendant. Objection was made on the ground that the paper had been altered. The order as offered bore the figures 11.55 as the price per barrel of Seaboard Clear flour. These figures were not in the paper when signed. There was evidence that the price had been left blank because at the time when he took the order and filled out the form the plaintiffs' agent did not know the price of Seaboard Clear flour, and that it was understood that the price would be stated in the confirmation to be sent by the plaintiffs. The figures were put in by an employee of the plaintiffs who sent a "confirmation." The paper was admitted and the defendant claimed his exception. The exception is not good. The insertion of the figures, if made under the circumstances detailed, was not a material alteration of the instrument. *Welch* v. *Bombardieri*, 252 Mass. 84. Whether it was so made was for the jury to decide.

A "confirmation" was sent to the defendant and received by him. This "confirmation," however, in addition to giving the price $11.55 per barrel for the flour, stated different terms in regard to freight from the order, and so did not constitute an acceptance. Both the "confirmation" and the letter which it accompanied stated $11.55 as the price per barrel of the Seaboard Clear flour.

The defendant testified that he did not recall giving any order for the Clear flour or that he saw the two hundred barrels in the order when he signed it. He received the "confirmation," which was mailed June 22, 1920, the day after the order was signed.

The plaintiffs offered in evidence copies of letters bearing date October 4, 15, 19, and December 21, 1920, all insisting upon directions for shipping the flour, and one of December 4, 1920, asking the defendant to call upon them. The defendant had been requested by subpoena *duces tecum* to produce the originals, and admitted that he received them; but could not produce them. The defendant excepted to the order of the trial judge admitting the letters. Insistence that the

defendant should give orders for shipping the flour was material to the plaintiffs' case. The letters were competent and admissible for this purpose. That they also recited that the defendant had been at the office of the plaintiffs and had promised to give shipping orders was incidental. The defendant did not ask that the jury be instructed to disregard these portions of the letters. "Generally speaking, admissible evidence is not made inadmissible by carrying with it some collateral fact disadvantageous to the other side, which of itself could not be put in proof." *Weston* v. *Barnicoat,* 175 Mass. 454, 456. The letters of October 15 and 19 also were connected directly with a letter from the defendant of October 16 which was an answer to the letter of October 15 and was the occasion of the letter of October 19 in reply. The exceptions to the admission are overruled.

A witness for the plaintiffs was asked in cross-examination whether the Good Will flour which they had for filling the order was the same as flour that previously had been sent to the defendant as Good Will flour. He answered that practically it was, except that the flour sold was from a new crop and that wheat varies in grade from year to year. He then was asked whether the defendant, at some of the interviews referred to at Boston, had not said that he could not use it if it was no better than what he had had. On objection, the question was excluded and the defendant excepted. The exclusion was placed upon the ground that there was no evidence then in the case which showed what the defendant had known, at the time of giving the order, in regard to the quality of Good Will flour; and that evidence that the flour from which the order would be filled did not come up to that quality was, therefore, premature. The evidence was excluded merely at that stage of the trial. The ruling was within the discretion of the judge in the orderly trial of the case. *Morse* v. *Woodworth,* 155 Mass. 233, 248. *Rosenberg* v. *Krecioh,* 216 Mass. 224. *Powers* v. *Boston & Maine Railroad,* 175 Mass. 466. It was not again offered.

The defendant testified that the agent of the plaintiffs had shown him a sample and had exhibited the color of the flour on a tester; and his counsel offered to show that other flour

which he received later than June 21, 1920, was inferior in quality, and made a poor colored bread, a bread that would not rise and had a bad taste, and that the defendant told the plaintiffs that unless the flour which he had ordered on June 21, was better — was different — from the Good Will flour which he then had from them, which was inferior, he would not use it. The offer was rejected. The defendant's exception must be overruled. The agent denied that he had had a sample, or had shown any to the defendant. Whether or not there was a sale by sample was a question of fact for the jury; but, assuming that the jury believed the defendant, the evidence offered fell far short of showing that the flour which the plaintiffs sold on June 21, and were willing to deliver in accord with the order as finally fixed upon between the parties, was not up to the standard of the alleged sample. The defendant's knowledge came only from other flour; and his offer was to show that he could not use what they might supply if it was no better than this other flour, and not that it did not correspond with the sample.

As already stated, there was evidence that after June 21, the defendant had requested the plaintiffs to hold the flour until he gave orders for shipment and that he repeatedly failed to give such order. On October 16, 1920, in answer to the plaintiffs' letter of October 15, which asked for a reply by return mail advising when "your next car of flour" should be shipped, the defendant wrote " . . . I cannot use any flour at the present time as the last car you shipped me was so poor that I have to buy flour to mix with it . . . . I will let you know when I will be able to use the flour at a latter [*sic*] date. Hoping that this will be satisfactory . . . ." To this, under date of October 19, the plaintiffs replied that it was impossible for the flour to be off grade. "We must insist upon shipping directions from you by return mail."

The refusal of the judge to direct a verdict for the defendant was correct, unless the statute of frauds constituted a defence. The judge instructed the jury that there was a written contract of sale entered into by the parties. If this were true, or if the jury could find it to be true, the statute of frauds has no application. It does not apply to written

contracts of sale. If, however, the parties made an oral contract of sale evidenced by memoranda, the question, whether those memoranda satisfy the statute of frauds is material, and failure to meet the requirements of the statute will be a good defence. The defendant contends that there was such failure, and that the judge should have ruled that the statute had not been satisfied, and should have directed a verdict for the defendant.

The order originally signed by the defendant would satisfy the statute had the terms therein stated been accepted by the plaintiffs. It is insufficient because it does not contain the terms of the contract as finally agreed upon. The "confirmation" was not signed by the "party to be charged," and likewise is insufficient. The letter of October 16, 1920, in answer to the plaintiffs' letter of October 15, was, however, signed by the defendant, the party to be charged; and, if the four papers can be read together, the requirements of the statute are met. The terms agreed upon then fully appear, with a signature by the defendant authenticating them. That they can be so taken together is established as law in Massachusetts, whatever it may be elsewhere, by the cases of *Lee* v. *Butler*, 167 Mass. 426, *Nickerson* v. *Weld*, 204 Mass. 346, *Arcade Malleable Iron Co.* v. *Jenks*, 229 Mass. 95, 102, *George Lawley & Son Corp.* v. *Buff*, 230 Mass. 21, 24, *Schmoll Fils & Co. Inc.* v. *Wheeler*, 242 Mass. 464, 469. Oral testimony to connect the writings is admissible. *Nickerson* v. *Weld*, *supra*. The statute of frauds is satisfied if writings authenticated by the signature of the party to be charged and containing all the material terms of the contract are put in evidence. The judge was right in refusing to direct a verdict for the defendant.

The defendant presented nine requests for instructions to the jury, and excepted to the refusal to give eight of them. There was evidence for the jury which would justify a finding for the plaintiffs. The insertion of the price was not necessarily a material alteration. The first and second requests were denied properly. Requests 3, 7, and 8 related to delivery by the plaintiffs, and were inapplicable if the jury found that the defendant requested that no delivery be made

until he so directed and failed to give directions therefor before the action was begun. Requests 4 and 5 dealt with the "confirmation" and were given so far as they were accurate. Whether the plaintiffs could recover involved other considerations not stated in the requests. Request 6 was inapplicable upon the evidence. The exceptions to the refusal to give the instructions must be overruled.

The judge instructed the jury that, as matter of law, the parties had entered into a written contract in the terms of the "confirmation"; and left them to decide only whether there had been a waiver of delivery by the plaintiffs, and, if they found such waiver, the amount of the damages. The defendant excepted to the ruling that a written contract had been made; to the instructions in regard to waiver, and to the rule of damages laid down.

The jury was instructed that the damages were the "difference between the contract price . . . as fixed by the order . . . and the fair market value of the same goods" in February when the defendant finally refused to take the goods, with interest from March 14, 1921, the date of the writ. In this there was no error. The exception is not argued, and we treat it as waived.

There was evidence from which the jury could find that no delivery was made before February because the defendant had so requested, and that no tender was made because the defendant absolutely refused to accept the goods and warned the plaintiffs not to ship them. In such circumstances, delivery was excused and a tender was not necessary. *Empire State Pickling Co.* v. *Empire Grocery Co.* 235 Mass. 418.

The judge was right in holding that the interpretation of the order, the confirmation and the letters of October 15 and 16, was for the court, and that they contained the terms of the contract, *Brunelle* v. *Lowell Electric Light Corp.* 188 Mass. 493; but he went further and ruled that the parties entered into a contract in those terms. The defendant contends that whether a contract was made was for the jury; that the transaction was oral, evidenced by written memoranda, and was binding upon the parties only if as a fact the defendant accepted the counter proposition made to him by the "con-

firmation" sent by the plaintiffs in reply to his offer contained in the order. The determination of this fact was, he contends, for the jury. This contention must prevail, unless the parties entered into a written contract. Ordinarily the question whether a contract has been made is one of fact. If the evidence consists only of writings, or is uncontradicted, the question is for the court; otherwise it is for the jury. *Lyman B. Brooks Co.* v. *Wilson*, 218 Mass. 205. *Waldstein* v. *Dooskin*, 220 Mass. 232. *Gould* v. *Converse*, 246 Mass. 185. *Hammond Coal Co. Inc.* v. *Lewis*, 248 Mass. 499.

There was no single writing signed by both parties and intended by them to embody all the terms of their contract. Whether anything ever was signed by the defendant, after the order was sent, with the intention of affixing his signature to a paper which was to form part of a written embodiment of the agreement made with the plaintiffs, depends not only upon the inference to be drawn from the language of the letter of October 16, but also upon inferences to be drawn from the statements made by the defendant in his interviews with the plaintiffs. The evidence in regard to those interviews was contradictory, and the judge should have submitted the question to the jury. If they found that the defendant never intended to enter into a written contract, as distinguished from an oral contract, then they could not find that a written contract had been made. It is clear that if the contract actually made was oral, the defendant was not bound unless he assented to the terms stated in the "confirmation"; and that the determination of the facts of the defendant's conduct and the inferences to be drawn therefrom was for the jury.

The instructions confused a written contract with an oral contract evidenced by written memoranda, and were erroneous in this respect. As a result this exception must be sustained.

In his brief the defendant suggests that there was no proof that the plaintiffs are the parties entitled to maintain a suit on the contract. The order was addressed to "The Seaboard Flour Co., of Boston, New York, Minneapolis." The signature is "The Seaboard Flour Co. Bresky Bros. Per S. L. T.

Salesman." No question, apparently, was made at the trial that the plaintiffs were the Bresky Brothers doing business as the Seaboard Flour Company; nor was the attention of the judge called to this matter. It is too late to raise the question now.

*Exception sustained.*